UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHARLES TAYLOR LIMITED,

   Plaintiff,

 -against-

JOHN DOE and JANE DOE, numbers 1 through 10;
and ABC COMPANY, numbers 1 through 10,

   Defendants.

Civil Action No. _____

**COMPLAINT**

---

Plaintiff Charles Taylor Limited ("Plaintiff" or "CT"), by and through its undersigned attorneys, Carter Ledyard & Milburn LLP, as and for its Complaint against Defendants John Doe and Jane Doe, numbers 1 through 10, and ABC Company, numbers 1 through 10 (together, "Defendants") respectfully alleges on knowledge as to itself and its own actions and on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1. Between September 2022 to December 2022, Plaintiff was victimized by unknown cybercriminals who intentionally and unlawfully infiltrated the computer network and email systems of a third party, obtained access to and intercepted the third party's and Plaintiff's data, and then impersonated the third party's employees in communications with Plaintiff. Utilizing manipulated invoices, these cybercriminals caused Plaintiff to unknowingly authorize bank transfers totaling $2,088,180.01 to accounts that the cybercriminals owned or controlled, rather than to the legitimate, intended recipient of the funds.

2. By this action, Plaintiff seeks to identify the cybercriminals responsible for the theft of the funds, recover the amounts stolen, and hold Defendants accountable for the damages and

other harm they have caused to Plaintiff as a direct and proximate result of their unlawful conduct pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 (the "CFAA"), and the common law tort of conversion.

## PARTIES

3. Plaintiff Charles Taylor Limited is a private limited company formed and existing under the laws of England and Wales, with a principal place of business located in London, England.

4. Defendants are the cybercriminals responsible for the scheme and theft of the $2,088,180.01 in funds. Defendants' true names, identities, and physical locations are presently unknown, and Plaintiff will seek leave of Court to amend this Complaint to set forth the true names and capacities of Defendants when they are ascertained.

## JURISDICTION AND VENUE

5. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Plaintiff asserts a cause of action against Defendants arising under and pursuant to the CFAA. The Court has supplemental jurisdiction over Plaintiff's common law cause of action for conversion pursuant to 28 U.S.C. § 1367.

6. This Court has personal jurisdiction over Defendants by virtue of their business activities in this jurisdiction, including their use of a bank account maintained in New York, New York to perpetrate their scheme.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) or, alternatively, 28 U.S.C. § 1391(b)(3).

## FACTUAL ALLEGATIONS

A. **Overview of Defendants' Scheme**

8.  Plaintiff is in the business of providing insurance management services to mutual insurance associations and captive insurance companies, and offers advisory, adjusting, underwriting, claim management, operations, and support services to insurance sector clients.

9.  Plaintiff was appointed as the insurance loss adjuster by Global Aerospace on behalf of certain reinsurers (the "Reinsurers") in relation to a claim made by PT Wings Abadi (Lion Group) (the "Underlying Insured") for damage to an aircraft that occurred in May 2022.

10. On or about September 8, 2022, the Underlying Insured entered into a repair agreement with Avions de Transport Regional ("ATR"), the Underlying Insured's aircraft repairer, for repairs to the aircraft. Reinsurers established a fund in the amount of $4 million to be held and used by Plaintiff to pay ATR for the repairs.

11. Plaintiff and Reinsurers agreed that three payments totaling $2,088,180.01 would be made by Plaintiff to ATR for repairs to the aircraft, inclusive of a $700,174.33 payment in September 2022 ("Payment One"), a $1,181,609.95 payment in November 2022 ("Payment Two"), and a $206,395.73 payment in December 2022 ("Payment Three" and, together with Payment One and Payment Two, the "Three Original Payments").

12. The general process to be followed by the parties was as follows: (a) ATR was to issue a quotation to the Underlying Insured for the costs of the individual repairs to the damaged aircraft; (b) ATR then, in line with the quotation, was to issue an invoice via email to the Underlying Insured, copying Plaintiff, and setting out the payee bank account details into which ATR wished for the amounts due under the invoice to be paid; (c) Plaintiff was to then issue a payment authorization release form to the Underlying Insured, into which Plaintiff copied ATR's

3

bank account details and the amounts payable to ATR; and (d) the Underlying Insured was to sign the payment authorization release form and send it to Plaintiff, following which Plaintiff would instruct its bank (NatWest) to make the relevant payment.

13. Based on Plaintiff's investigation, Defendants interceded in this process by knowingly and intentionally gaining unauthorized access to ATR's computer network and email systems, intercepting Plaintiff's emails with ATR and obtaining copies of invoices relating to payments required to be made to ATR. Defendants then altered the invoices to change the payee account details and, impersonating ATR employees by use of their emails and fraudulent emails designed to closely resemble ATR's legitimate emails, caused Plaintiff to issue payment authorizations for the Three Original Payments to be made to bank accounts owned or controlled by Defendants. As a result, the Three Original Payments were diverted from the intended recipient, ATR, to Defendants.

14. The precise circumstances resulting in the theft of each of the Three Original Payments by Defendants are set forth below. Plaintiff was alerted to Defendants' scheme after learning that ATR did not receive the Three Original Payments and, as a result, Plaintiff made a further "make-good" payment to the proper ATR account in the same amount as the total of the Three Original Payments (the "Make-Good Payment").

**B. Payment One**

15. On September 21, 2022, Plaintiff received an email from an individual purporting to be Fanny Raibaud of ATR, making use of the email address fanny.raibaud@atr-aircraft.com, which utilized ATR's legitimate email domain. The email stated that ATR would be sending an invoice for Payment One with revised payee account details.

16. Based upon Plaintiff's subsequent investigation, the September 21, 2022 email and others described below appear to have actually been sent by Defendants after gaining unauthorized access to ATR's computer network and email systems, and intercepting Plaintiff's communications with ATR. However, at the time of each such email, Plaintiff had not been alerted to and was unaware that any such unauthorized access had occurred.

17. On September 22, 2022, Defendants, impersonating an employee of ATR by using the fraudulent email address fanny.raibaud@atr-aircraft.net,[1] sent another email to the Underlying Insured and Plaintiff. The email purported to attach invoices with updated bank account details. As Plaintiff later learned, these invoices had been altered to use the details for a bank account that is now believed to have been owned or controlled by Defendants at Citizens Bank (the "Citizens Bank Account").

18. Unaware that any unauthorized access to ATR's computer network and email systems had occurred, Plaintiff emailed the Underlying Insured on September 27, 2022, and requested execution of a payment authorization release form that utilized the Citizens Bank Account details that had been provided by Defendants.

19. Later that day, the Underlying Insured signed the payment authorization release form providing for Payment One to be made to the Citizens Bank Account. Plaintiff, relying on the invoice sent by Defendants, issued payment instructions to its bank, NatWest, to make Payment One to the Citizens Bank Account, resulting in Payment One being made to the Citizens Bank Account.

---

[1] Unbeknownst to Plaintiff and the Underlying Insured at the time, Defendants used ".net" in the email address, instead of ATR's legitimate ".com" email domain.

### C. Payment Two

20. On October 27, 2022, Plaintiff received an email from an individual again making use of the email address fanny.raibaud@atr-aircraft.com, which utilized ATR's legitimate email domain. The email attached an invoice concerning Payment Two, and again identified the Citizens Bank Account as ATR's. Plaintiff, still unaware of any unauthorized access to ATR's computer network and email systems, authorized its bank, NatWest, to make Payment Two to the Citizens Bank Account.

21. On November 2, 2022, Plaintiff received another email from an individual making use of the legitimate email address fanny.raibaud@atr-aircraft.com. The email advised that the Citizens Bank Account "is currently under bank audit" and that ATR would be unable to receive Payment Two until the audit period was over. The individual who sent the email requested that Plaintiff instruct its bank to recall Payment Two, which Plaintiff did. Payment Two was then returned to Plaintiff's bank account at NatWest on November 4, 2022.

22. On November 7, 2022, Plaintiff received another an email from an individual making use of the legitimate ATR email address fanny.raibaud@atr-aircraft.com. The email stated that ATR had been informed by Citizens Bank that Payment Two had been returned to Plaintiff's NatWest account and asked for Plaintiff's confirmation. Plaintiff replied to confirm that it would check and asked which bank account Payment Two should be sent to instead.

23. On November 8, 2022, Defendants, impersonating Fanny Raibaud of ATR and using the fraudulent email address fanny.raibaud@atr-aircraft.net, sent an email to Plaintiff and the Underlying Insured. The email attached an invoice identifying a payee account maintained with Bank of America (the "BofA Account"). The account holding branch for the BofA Account

11159423.5

is located in New York, New York and is believed to have been owned or controlled by Defendants.

24. Later that same day—November 8, 2022—Plaintiff received an email from the Underlying Insured attaching the completed payment authorization release for Payment Two to be made to the BofA Account. The next day, Plaintiff issued payment instructions to its bank, NatWest, resulting in Payment Two being made to the BofA Account.

D. **Payment Three**

25. On December 7, 2022, Defendants, again impersonating Fanny Raibaud of ATR and using the fraudulent email address fanny.raibaud@atr-aircraft.net, sent an email to Plaintiff confirming receipt of "the total of US$1,881,784.73" (*i.e.*, Payment One plus Payment Two) and inquiring about the status of Payment Three.

26. Defendants also sent to Plaintiff and the Underlying Insured another invoice identifying the BofA Account as ATR's payee account for Payment Three. Upon receiving from the Underlying Insured the completed payment authorization release for Payment Three to be made to the BofA Account, Plaintiff issued payment instructions to its bank, NatWest, resulting in Payment Three being made to the BofA Account on December 14, 2022.

E. **The Make-Good Payment**

27. Plaintiff was alerted to Defendants' scheme when the legitimate ATR entity contacted Plaintiff on December 15, 2022 and advised that ATR had not received any of the Three Original Payments.

28. Before Plaintiff could thoroughly investigate, Plaintiff received an email from the broker for the Reinsured and the Underlying Insured on December 17, 2022, requesting the Make-Good Payment and stating that "ATR require the funds before Monday [December 19, 2022] as

7

the repairs are scheduled for this week … ." According to the broker, "[w]e need to make the original first stage payments to ATR Monday so we can confirm settlement to them and advise [the Underlying Insured]."

29. Accordingly, Plaintiff authorized the Make-Good Payment to the legitimate ATR entity's bank account, which Make-Good Payment was for the same cumulative amount as the Three Original Payments (*i.e.*, $2,088,180.01 USD).

30. In connection with Plaintiff's investigation, Plaintiff became aware of Defendants' impersonation of ATR's employees via their unauthorized access to and use of ATR's legitimate email domain, @atr-aircraft.com, and use of the fraudulent email domain, @atr-aircraft.net.

31. On December 22, 2022, Plaintiff filed a fraud report with the United Kingdom Fraud and Cyber Crime Reporting Centre. Plaintiff then filed a report with the United States Federal Bureau of Investigation on January 3, 2023.

32. Plaintiff has attempted to determine Defendants' true names, identities, and physical locations through its own investigation and various other direct and indirect means, but has not been successful to date. Plaintiff has also been unable to recover or determine the disposition of the Three Original Payments made to the Citizens Bank and BofA Accounts used by Defendants.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030)

33. Plaintiff repeats and realleges each of the allegations made in the forgoing paragraphs as though fully set forth herein.

34. Pursuant to the CFAA, "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory

damages and injunctive relief or other equitable relief" where the conduct involves a loss during any one-year period aggregating at least $5,000 in value.

35. As detailed above, Defendants intentionally and unlawfully infiltrated ATR's computer network and email systems without authorization, which network and systems are connected to the Internet and used in interstate and foreign commerce, and obtained data and other information therefrom without authorization, including Plaintiff's emails with ATR and invoices relating the Underlying Insured's claim for damage to an aircraft. Defendants' actions and activities violated the CFAA.

36. Moreover, in violation of CFAA, Defendants, knowingly and with intent to defraud, unlawfully accessed ATR's computer network and email systems, which network and systems are connected to the Internet and used in interstate and foreign commerce, and obtained data and other information therefrom without authorization and, by means of such conduct, furthered the intended fraud and obtained things of value, including the Three Original Payments that Plaintiff intended to be paid to ATR.

37. Defendants' unlawful actions have damaged Plaintiff in excess of $5,000 during a period of less than one year. Between September 2022 and December 2022, Plaintiff caused the Three Original Payments to be made from Plaintiff's bank account to Defendants' Citizens Bank and BofA Accounts, instead of to ATR's actual accounts. Plaintiff also expended its own resources to investigate Defendants' unlawful conduct and caused the Make-Good Payment to be made to ATR in the amount of $2,088,180.01.

38. Plaintiff is therefore entitled under the CFAA to compensatory damages and injunctive and other equitable relief.

11159423.5

## SECOND CAUSE OF ACTION
### (Conversion)

39. Plaintiff repeats and realleges each of the allegations made in the forgoing paragraphs as though fully set forth herein.

40. By reason of the forgoing, Defendants have intentionally, and without authority, unlawfully interfered with and converted for themselves and their own benefit the funds maintained by Plaintiff in its NatWest bank account that were intended for ATR. Defendants had and have no lawful justification or excuse for their interference and conversion of the Three Original Payments.

41. As a direct and proximate result of Defendants' misconduct, Plaintiff has been damaged.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment in its favor as follows:

A. Temporarily, preliminarily, and permanently enjoining and restraining Defendants from intermeddling with Plaintiff's business, whether by the unlawful access and use of ATR's or any other party's computer networks and email systems or otherwise;

B. Awarding Plaintiff compensatory damages in an amount to be determined at trial, but in no event less than $2,088,180.01;

C. Awarding Plaintiff punitive damages;

D. Awarding Plaintiff attorneys' fees and costs; and

E. Awarding Plaintiff such other and further relief as the Court may deem just and proper.

| | |
|---|---|
| Dated: New York, New York<br>February 22, 2023 | CARTER LEDYARD & MILBURN LLP<br><br>By: _/s/ Stephen M. Plotnick_____<br>    Stephen M. Plotnick<br><br>28 Liberty Street, 41st Floor<br>New York, New York 10005<br>Tel. (212) 732-3200<br>Email: plotnick@clm.com<br>    ganley@clm.com<br><br>*Attorneys for Plaintiff Charles Taylor Limited* |

11159423.5